UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| MINDY THORNBERRY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 20-271-DCR |
| ) | |
| V. ) | |
| ) | |
| POWELL COUNTY DETENTION ) | **MEMORANDUM OPINION** |
| CENTER, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Mindy Thornberry was a substance abuse counselor at the Powell County Detention Center. In the early days of the COVID-19 pandemic, she refused to come to work absent new precautions to prevent the workplace spread of COVID-19. On April 1, 2020, Thornberry was terminated from her position. She now alleges violations of the Family and Medical Leave Act ("FMLA") and its COVID-19-related amendments. 29 U.S.C. §§ 2611–2620. Thronberry also alleges violations of the Kentucky Whistleblower Act ("KWA"). KRS §§ 61.102, 338.121. The Defendants, the Powell County Detention Center and Powell County employees, moved to dismiss Thornberry's Amended Complaint. [Record No. 8] The Court has fully considered the matter and will grant the motion to dismiss.

I.

Thornberry was employed as a substance abuse counselor at the Powell County Detention Center from January 3, 2020, until April 1, 2020. [Record No. 5 at ¶¶ 11, 59] Her job required that she meet with up to twenty-five inmates at a time to conduct a residential counseling program. [*Id.* at ¶¶ 14–15] These in-person meetings were complicated in mid-

March by the COVID-19 pandemic, which had been declared an emergency in Kentucky. [*Id.* at ¶ 25] Thornberry and her colleagues were ordered to stay home from work between March 18 and March 30, 2020, while the facility reacted to the situation. [*Id.* at ¶ 43]

Thornberry's concerns about working in-person at the Detention Center increased as her return drew near. Fellow counselors suggested that appropriate precautions were not being taken at the facility. [*Id.* at ¶¶ 44–46] Thornberry requested more information from Defendant David Howard, who indicated that precautions had been taken and that work would continue as normal. [*Id.* at 47–49] After returning to work for one day on March 30, 2020, Thornberry stayed home due to illness the following day. [*Id.* at 54] She also expressed concerns that lack of COVID-19 protections could place her or her family at risk. [*Id.*] Howard assumed that her message meant she was resigning. However, Thornberry responded that she was not resigning, but could not work in unsafe conditions. [*Id.* at ¶ 55]

Her back-and-forth with Howard continued on March 31 and April 1, 2020. Thornberry told Howard that she was "only asking for precautions and steps to be taken not to just not work. I will not work until those are taken." [*Id.* at ¶ 58] On April 1, 2020, Thornberry was "dismissed" by the Powell County Detention Center. [*Id.* at ¶ 59] She filed suit two months later in Fayette Circuit Court, which transferred the case to Powell Circuit Court. [Record No. 1-4] Defendants removed the action to this Court on June 24, 2020. [Record No. 1]

The plaintiff filed an Amended Complaint containing five claims in response to Defendants' first motion to dismiss. These claims include: (1) FMLA interference; (2) FMLA retaliation; (3) FMLA attorneys' fees; (4) KWA wrongful discharge; and (5) KWA attorneys'

fees. [Record No. 5] The defendants' renewed to motion to dismiss followed and has been fully briefed.

## II.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that "a complaint . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are unnecessary, this standard calls for "more than labels and conclusions." *Twombly*, 550 U.S. 544, 555 (2007). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 at 678. If Rule 8's standards are not satisfied, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate.

## III.

### a. Thornberry's Claims

Defining Thornberry's claims requires the Court to sort through the labor provisions of the recently-enacted Families First Coronavirus Response Act ("FFCRA"). Pub. L. No. 116-127, 134 Stat. 178 (2020). It appears that only two federal courts have previously addressed these provisions. *See Kofler v. Sayde Steeves Cleaning Serv.*, Case No. 8: 20-cv-1460-T033AEP, 2020 WL 5016902 (M.D. Fla. Aug. 25, 2020); *New York v. U.S. Dep't of Labor*, Case No. 20-CV-3020, 2020 WL 4462260 (S.D.N.Y. Aug. 3, 2020). Enacted in response to the COVID-19 pandemic, the FFCRA is divided into multiple divisions containing separate provisions. Thornberry's Complaint references multiple parts of the FFCRA, but she alleges violations of only its family and medical leave provisions.

One division of the FFCRA contains the Emergency Family and Medical Leave Expansion Act ("EFMLEA"). 134 Stat. at 189–92. The EFMLEA temporarily amends the FMLA to entitle certain employees to 12 weeks of leave per year "because of a qualifying need related to a public health emergency." 29 U.S.C. § 2612(a)(1)(F). An employee has such a qualifying need if:

> the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency.

*Id.* at § 2620(a)(2)(A). The requisite "public health emergency" must be related to COVID-19. *Id.* at § 2620(a)(2)(B).

Thornberry also references another division of the FFCRA, the Emergency Paid Sick Leave Act ("EPSLA"). 134 Stat. at 195–201. The EPSLA does not amend the FMLA. Rather, it is a separate provision with enforcement provisions tied to the Fair Labor Standards Act. § 5105, 134 Stat. at 197. Unlike the EFMLEA's single qualifying need, the EPSLA lists six circumstances related to COVID-19 which could trigger paid sick time. 134 Stat. at 195–96. Thornberry references government-ordered quarantine or isolation and COVID-19 symptoms as reasons for leave under the EFMLEA, but those circumstances are only included in the EPSLA's provisions. [Record No. 5 at ¶¶ 38–39] The definition of "reasonable notice" she cites is also found only in the EPSLA. [*Id.* at ¶ 40]

Thornberry alleges only violations of the FMLA as amended by the EFMLEA. Employees may file civil actions for violations 29 U.S.C. § 2615, as Thornberry did here. 29 U.S.C. § 2617(a)(1). That section allows employees to recover under the FMLA under the "interference" theory and the "retaliation" theory. *Id.* at § 2615; *see also Hoge v. Honda of*

*Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004). But Section 2615 enforces only the provisions of the EFMLEA, not the EPSLA. Accordingly, despite Thornberry's references to provisions of the EPSLA in her allegations, her Amended Complaint asserts violations stemming only from the EFMLEA. Its relevant provisions, codified at 29 U.S.C. §§ 2612(a)(1)(F) and 2620, govern her claims. Defendants' liability can only stem from her right to take leave to care for a school-aged son or daughter whose school has closed due to COVID-19.

### b. Application of the EFMLEA

The parties do not address a difficult issue: whether the provisions in the EFMLEA were in effect at the times alleged in the Amended Complaint. President Trump signed the EFMLEA into law on March 18, 2020, and its effective date was to be "not later than 15 days after the date of enactment of this Act"—April 2, 2020. 134 Stat. at 192. According to the Department of Labor, its provisions "became operational on April 1, 2020, effective on April 2, 2020." 85 Fed. Reg. 19,326, 19,327 (Apr. 6, 2020). The notices issued to employers by the Wage and Hour Division, which are displayed to inform employees, state that the "provisions will apply from April 1, 2020 through December 31, 2020." U.S. Dep't of Labor, Wage & Hour Div., WH1422, Employee Rights (2020). Employers were not required to display the notices until April 1, 2020. *Families First Coronavirus Response Act Notice—Frequently Asked Questions*, U.S. Dep't of Labor, https://www.dol.gov/agencies/whd/pandemic/ffcra-poster-questions (last visited Sept. 18, 2020).

Thornberry's Amended Complaint asserts that she was terminated on the morning of April 1, 2020. [Record Nos. 5, at ¶ 59; 5-3, at p. 11] All other events are claimed to have occurred before that date. Based on those allegations, it is an open question whether the

EFMLEA's provisions applied to her. It is well-settled that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also Caruthers v. P&G Mfg.*, 961 F. Supp. 1484, 1490 (D. Kan. 1997) ("Courts have found that the FMLA and its implementing regulations do not apply retroactively.") (collecting cases). The defendants could not be liable for any "interference with rights" under 29 U.S.C. § 2615 if the rights Thornberry asserts never applied to her employment. But because the defendants have not argued that Thornberry's claims are barred on these grounds, the undersigned declines to decide the issue here.

### c. Application of the Department of Labor Rule

Pursuant to the EFMLEA, the Secretary of Labor has promulgated a regulation which "exclude[s] certain . . . emergency responders from the definition of eligible employee." 29 U.S.C. § 2620(a)(3)(A). As relevant here, this exclusion applies to "correctional institution personnel . . . as well as individuals who work for such facilities employing these individuals and whose work is necessary to maintain the operation of the facility." 29 C.F.R. § 826.30(c)(2)(i). The defendants argue that Thornberry falls within this exception; Thornberry argues that she does not. [Record Nos. 8, at pp. 5–6; 9, at pp. 3–5; 10, at pp. 2–3]

But the regulation they cite was not effective until April 2, 2020. 85 Fed. Reg. 19,326. And like statutes, administrative rules do not apply retroactively, absent clear language to that effect. *Bowen*, 488 U.S. at 208. The language of the regulation here suggests it is not retroactive. 29 C.F.R. § 826.160(2). Therefore, because the rule took effect *after* the events alleged in the Complaint took place, no exclusion for emergency responders governs in this

case. *See Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1111 n.1 (6th Cir. 1997) (declining to apply FMLA-related regulations effective after relevant events took place). However, assuming Thornberry was eligible for leave under 29 U.S.C. § 2612(a)(1)(F), she has failed to allege that she sought it.

### d.  Failure to State a Claim

Thornberry's Amended Complaint raises both an FMLA interference claim and an FMLA retaliation claim under 29 U.S.C. § 2615(a)(1)–(2). To state an interference claim, Thornberry must allege that:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). And to state a retaliation claim, she must allege that:

> (1) she was engaged in activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to here; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.*; *see also Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582–83 (6th Cir. 2012) (applying *Donald* at the motion-to-dismiss stage).

Thornberry's Amended Complaint is insufficient on both claims, for the same reason: she does not allege that she *actually sought* EFMLEA leave. As defined by *Donald*, both of Thornberry's claims require her to allege that she gave the defendants "notice of her intention to take leave" or "engage[d] in activity protected by the FMLA." 667 F.3d at 761. Here,

- 7 -

Thornberry's allegations focus on two concerns: (1) the health of family members living under her roof; and (2) the alleged lack of precautions taken by Defendants. [Record No. 5 at ¶¶ 68, 69, 83] But those concerns which may be relevant to the EPSLA or the Occupational Safety and Health Act are unrelated to her EFMLEA claims.

As noted above, Thornberry's entitlement to leave under the EFMLEA includes only leave to care for a child whose school has closed due to COVID-19. 29 U.S.C. §§ 2612(a)(1)(F); 2620(a)(2)(A). She correctly alleges that having a child at home may entitle her to leave. [Record No. 5 at ¶ 65] Yet her Amended Complaint contains no allegation that she informed the defendants that she had to stay home to care for her child. In fact, she stated that she was "only asking for precautions and steps to be taken not to just not work." [Record Nos. 5, at ¶ 58; 5-3, at p. 10] Thornberry also told Defendant Howard, *via* text: "I have said multiple times that this is not about me not working[.] I don't mind one bit to work if it is in a manner that myself my family and my clients are safe." [Record No. 5-3, at p. 9] She equates demanding increased precautions before returning to work—thus protecting her school-age child from COVID-19—with requiring leave to care for her child. But refusing to work in unsafe conditions and requesting leave are not always the same. The EFMLEA covers only requests for leave, and she has not alleged that she made that request.

In short, Thornberry has failed to allege facts from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, her claims under the FMLA, as amended by the EFMLEA, will be dismissed. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over her remaining state law claims.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendants' motion to dismiss [Record No. 8] is **GRANTED**.

2. Counts One, Two, and Three of Plaintiff Mindy Thornberry's Amended Complaint are **DISMISSED**, with prejudice.

3. Counts Four and Five of Plaintiff Mindy Thornberry's Amended Complaint are **DISMISSED**, without prejudice.

4. This matter is **DISMISSED** and **STRICKEN** from the docket.

Dated: September 22, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky